**EXHIBIT 4**

CONSOLE MATTIACCI LAW, LLC
BY: Stephen G. Console, Esq.
Identification No. 36656
Lane J. Schiff, Esq.
Identification No. 314179
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
Attorneys for Plaintiff

*Filed and Attested by the
Office of Judicial Records
05 NOV 2021 03:15 pm
E. NAUTER*

**THIS IS NOT AN ARBITRATION MATTER
A JURY TRIAL IS DEMANDED
ASSESSMENT OF DAMAGES IS REQUIRED**

| | |
|---|---|
| **MARIAN "JOSIE" WASHINGTON-MCQUAY**<br>**West Chester, PA 19382** | :<br>:<br>: |
| | : **IN THE COURT OF COMMON PLEAS** |
| | : **PHILADELPHIA COUNTY** |
| **Plaintiff,** | : |
| **v.** | : **JULY TERM, 2021** |
| | : |
| | : **DOCKET NO. 001856** |
| **WW HEALTH SOLUTIONS;**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,** | :<br>:<br>:<br>: |
| **WW NORTH AMERICA HOLDINGS,**<br>**INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,** | :<br>:<br>:<br>:<br>: |
| **&** | :<br>: |
| **WW INTERNATIONAL, INC. f/k/a**<br>**WEIGHT WATCHERS**<br>**INTERNATIONAL, INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010** | :<br>:<br>;<br>:<br>: |
| **Defendants.** | : |

## COMPLAINT

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

**NOTICE TO DEFEND**

**NOTICE**

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**
*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*
**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

**AVISO**

**Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*
**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

Case ID: 210701856

CONSOLE MATTIACCI LAW, LLC
BY: Stephen G. Console, Esq.
Identification No. 36656
Lane J. Schiff, Esq.
Identification No. 314179
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
Attorneys for Plaintiff

**THIS IS <u>NOT</u> AN ARBITRATION MATTER**
**A JURY TRIAL <u>IS</u> DEMANDED**
**ASSESSMENT OF DAMAGES <u>IS</u> REQUIRED**

| | |
|---|---|
| **MARIAN "JOSIE" WASHINGTON-MCQUAY**<br>**West Chester, PA 19382**<br><br>**Plaintiff,**<br>**v.**<br><br>**WW HEALTH SOLUTIONS;**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,**<br><br>**WW NORTH AMERICA HOLDINGS, INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010,**<br><br>**&**<br><br>**WW INTERNATIONAL, INC. f/k/a**<br>**WEIGHT WATCHERS**<br>**INTERNATIONAL, INC.**<br>**675 Sixth Avenue, 6th Floor**<br>**New York, NY 10010**<br>**Defendants.** | **IN THE COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY**<br><br>**JULY TERM, 2021**<br>**DOCKET NO. 001856** |

## <u>COMPLAINT</u>

### I.   <u>INTRODUCTION</u>

Plaintiff, Marian Washington-McQuay, brings this action against her former employers,

WW Health Solutions; WW North America Holdings, Inc., WW International, Inc. f/k/a Weight

Watchers International, Inc. ("Defendants").  Defendants discriminated against Plaintiff based on

her race and disability and additionally retaliated against her for engaging in protected activity,

3

Case ID: 210701856

in violation of Title 42 U.S.C. §1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a) *et seq.* ("NYCHRL"). Defendants further discriminated and retaliated against Plaintiff in violation of the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"). Defendants additionally failed to pay Plaintiff commissions owed to her in violation of the Wage Payment and Collection Law, 43 P.S. 206.1, *et seq.* ("WPCL").  Plaintiff seeks all damages allowable under the law.[1]

## II.   PARTIES

1.     Plaintiff, Marian "Josie" McQuay, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.     Plaintiff is African American.

3.     Defendant WW Health Solutions is a corporation with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

4.     Defendant WW North America Holdings, Inc. is a corporation with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

5.      Defendant WW International, Inc. f/k/a Weight Watchers International, Inc is a corporation with a place of business at 675 Sixth Avenue, 6th Floor, New York, NY 10010.

6.     At all times material hereto, Defendants employed more than fifty (50) employees.

7.     At all times material hereto, Defendants collectively constituted Plaintiff's

---

[1] Plaintiff plans to amend her Complaint one (1) year after the filing of her Third Complaint with the Pennsylvania Human Relations Commission (cross filed with the Equal Employment Opportunity Commission) to add claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1101, *et seq.* ("PFPO").

Case ID: 210701856

employer under the joint and/or single employer doctrine.  Upon information and belief,
Defendants shared common management, had interrelated operations, and collectively controlled
Plaintiff's job duties and responsibilities

8.     At all times material hereto, Defendants acted by and through its authorized
agents and/or employees acting within the course and scope of their employment with
Defendants and in furtherance of Defendants' business.

9.     At all times material hereto, Defendants acted as an employer within the meaning
of the statutes which form the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendants within the
meaning of the statutes which form the basis of this matter.

## III.   **JURISDICTION AND VENUE**

11.     The causes of action which form the basis of this matter arise under Section 1981,
the FMLA, the NYSHRL, the NYCHRL, and the WPCL.

12.     Jurisdiction is proper in this Court pursuant to 42 Pa.C.S. §5301, *et seq.* because
Defendants engage in continuous and systematic business within Pennsylvania, have caused
harm or injury by act or omission in Pennsylvania, or otherwise have purposefully directed
activities at Pennsylvania residents and purposefully availed themselves of the privilege of
conducting activities within Pennsylvania.

13.     Venue in Philadelphia County, Pennsylvania is proper pursuant to 246 Pa.C.S.
§302(c) because, *inter alia*, Defendants regularly conduct business in Philadelphia County.

## IV.   **FACTUAL ALLEGATIONS**

14.     Plaintiff was employed by Defendants from in or about June 2016 until on or
about September 1, 2021, the date of her unlawful termination of employment.

Case ID: 210701856

15.     Plaintiff held the position of Sales Executive.

16.     Plaintiff consistently performed her job duties in a highly competent manner.

17.     Plaintiff was based out of her home office in Pennsylvania.

18.     Plaintiff regularly traveled to and worked in New York, New York.

19.     Plaintiff regularly traveled to and worked in Philadelphia, Pennsylvania.

20.     From the time of Plaintiff's hiring until in or about April 2019, Plaintiff reported to Will Harbour (white), National Sales Manager.

21.     In or about February 2018, Defendants removed approximately sixty-two (62) accounts from Plaintiff's territory, which reduced her compensation and future opportunities.

22.     Plaintiff was the only African American employee reporting to Harbour and the only employee who had accounts removed.

23.     In or about March 2019, Harbour separated from Defendants. Defendants changed the title of his now vacant National Sales Manager position to Vice President of Sales.

24.     On or about April 26, 2019, Plaintiff was appointed as Interim Vice President of Sales.

25.     Plaintiff expressed interest in being promoted into the Vice President of Sales position permanently.

26.     On or about July 29, 2019, while Plaintiff was in Defendants' New York, New York Office, Defendants informed Plaintiff that they would not promote her into the position of Vice President of Sales.

27.     Defendants instead hired Timothy Patno (white) into the Vice President of Sales position.

28.     Patno was an external candidate who was less experienced and qualified than

6

Case ID: 210701856

Plaintiff for the position of Vice President of Sales.  In fact, Plaintiff thereafter trained Patno for the Vice President of Sales position.

29.     Plaintiff began reporting to Patno in or about August 2019.

30.     At all times, Plaintiff was the only African American employee who reported to Patno.

31.     Defendants subjected Plaintiff to invidious discrimination.

32.     In or about September 2019, Plaintiff gave a work presentation.  Following Plaintiff's presentation, Plaintiff and the only other black individual present during the presentation were asked to leave the meeting.

33.     Following the meeting, Plaintiff complained to Defendants of race discrimination in connection with Defendants' actions.

34.     Defendants failed to take appropriate corrective and remedial action.

35.     Shortly thereafter, Defendants removed from Plaintiff a portion of her accounts, which reduced Plaintiff's compensation and future opportunities, and assigned them to a newly hired white employee, Megan Voight, Sales Executive.

36.     Plaintiff was more qualified to manage the accounts than Voight.

37.     Plaintiff expressed to Defendants an interest in serving as the Sales Liaison for Defendants franchise partners and training the franchise teams, which was an important role that would have provided her significant exposure within the company. In or about October 2019, Defendants instead assigned the responsibility to a less qualified white employee, Jennifer McTigue, Regional Sales Manager.

38.     In or about October 2019, Defendants hired Laura MacDonald (white) for the newly created Director of Business Development position.

7

Case ID: 210701856

39.     Defendants did not post the position or give Plaintiff an opportunity to apply. Had the position been posted, Plaintiff would have applied for it.

40.     Plaintiff was more qualified than McDonald for the Director of Business Development position.

41.     Following MacDonald's hiring, Defendants removed certain job duties and responsibilities from Plaintiff and assigned them to MacDonald.

42.     In or about October 2019, during Defendants' National Meeting, Sales Breakout, Patno instructed a less qualified white employee to oversee the meeting instead of Plaintiff.

43.     In or about December 2019, Patno told Plaintiff that she was not invited to attend a meeting with one of her largest clients.  Other white employees were permitted to attend the meeting.

44.     In or about January 2020, Patno announced a territory realignment.  Plaintiff was the only Sales Executive reporting to Patno who had accounts and states removed, which reduced Plaintiff's compensation and future opportunities.

45.     The accounts and states removed from Plaintiff were assigned to Voight, who was less qualified than Plaintiff to manage these accounts.

46.     On or about February 4, 2020, Plaintiff secured a significant account, the CVS Health/Caremark/Aetna account.

47.     On or about February 25, 2020, Defendants removed the CVS Health/Caremark/Aetna account from Plaintiff and gave it to MacDonald, who was less qualified than Plaintiff to handle this account.

48.     On or about June 3, 2020, during a company presentation, Defendants unjustly gave credit to MacDonald for the CVS Health/Caremark/Aetna account that Plaintiff had

Case ID: 210701856

secured.

49.     On or about June 5, 2020, Plaintiff participated in a conference call with

Kimberly Seymour, Senior Vice President, Corporate Human Resources, and approximately

thirty (30) other employees, wherein they discussed recent protests in connection with the Black

Lives Matter movement.

50.     Plaintiff complained about the lack of career advancement opportunities that

existed for African American employees working for Defendants and the lack of diversity within

Defendants' workforce. Plaintiff suggested that Defendants hold diversity training, develop

accountability for race discrimination, and suggested outreach to the black community.

51.     Plaintiff thereafter complained to Defendants of discrimination on numerous

additional occasions throughout June and July 2020, including, without limitation, the lack of

career advancement and opportunities for African American employees, Defendants' failure to

provide Plaintiff with a promotion despite her repeated interest in career advancement, and

Defendants' removal from  Plaintiff of the CVS Health/Caremark/Aetna account.

52.     Defendants failed to take appropriate remedial and corrective action.

53.     Defendants informed Plaintiff that they did not foresee any career advancement

going forward and that Plaintiff had been denied opportunities because of employees'

"perception" of Plaintiff.

54.     Plaintiff specifically expressed an interest in the Chief Diversity and Inclusion

position.  However, Defendants stated that they were looking to hire an external candidate for the

position.

55.     On or about July 20, 2020, in a meeting with Patno and Christina Westbrooks al-

Haddad, Senior Human Resources Advisor, Defendants advised Plaintiff that there was a

Case ID: 210701856

miscommunication regarding the CVS Health/Caremark/Aetna account.  Defendants informed

Plaintiff that they had hired MacDonald to manage this type of clien, but that Plaintiff would

lead part of the account – the Direct to Employer relationship – going forward.

56.     On or about July 27, 2020, Defendants again removed accounts from Plaintiff,

which reduced her compensation and future opportunities, and assigned them to less qualified

white Sales Executives.

57.     As a result of Defendants' removal of Plaintiff's accounts, Plaintiff complained of

retaliation. Defendant failed to take appropriate corrective or remedial action.

58.     On or about July 30, 2020, Defendants again unjustly gave credit to MacDonald

for securing the CVS Health/Caremark/Aetna account.

59.     On or about August 5, 2020, during a meeting with Patno and Westbrooks al-

Haddad, Defendants issued Plaintiff an unjustified Employee Warning Letter.  The Employee

Warning Letter contained false statements and misrepresentations.

60.     During the August 5, 2020 meeting, Defendants additionally informed Plaintiff

that, despite previously representing that she would receive compensation for her work to date on

the CVS Health/Caremark/Aetna account, Defendants would not compensate Plaintiff for the

same.

61.     Following the meeting, on or about August 5, 2020, Plaintiff commenced a

medical leave of absence, pursuant to the FMLA, due to the discrimination and retaliation to

which Defendants had subjected her.

62.     Plaintiff suffers from anxiety and depression, both of which are disabilities under

the law.

63.     On or about November 23, 2020, Plaintiff filed a Complaint with the

Case ID: 210701856

Pennsylvania Human Relations Commission ("PHRC").

64.     Plaintiff returned from her medical leave on or about February 1, 2021.

65.     Plaintiff's medical leave was a reasonable accommodation for her disabilities.

66.     Shortly after Plaintiff returned from her medical leave, she learned that Defendants took many of her sales accounts and gave them to other white employees, which reduced Plaintiff's compensation and future opportunities.

67.     On or about February 9, 2021, Plaintiff complained to Defendants of discrimination and retaliation regarding the same.

68.     Defendants failed to take appropriate corrective or remedial action.

69.     On or about March 12, 2021, Defendants gave Plaintiff an unjustified performance review of "Needs Improvement." This was the worst performance review that Plaintiff had received in her career with Defendants.

70.     In or about May 2021, Defendants removed the CVS Health/Caremark/Aetna from Plaintiff in its entirety.

71.     Defendants alleged that a member of the CVS Health/Caremark/Aetna account stated Plaintiff did not cater to their needs and that she was too pushy and aggressive. When Plaintiff asked for specific details of her alleged poor behavior, Defendants refused to provide Plaintiff with that information.

72.     Plaintiff never received any prior feedback from the account that she did not cater to their needs, and her interactions and feedback with the account were positive.

73.     On or about June 8, 2021, Defendants placed Plaintiff on an unjustified Performance Improvement Plan ("PIP").

74.     On or about June 22, 2021, Plaintiff emailed Defendants a rebuttal to the

Case ID: 210701856

allegations in the PIP. Plaintiff additionally complained that Defendants were discriminating and retaliating against Plaintiff.

75.     Defendants failed to take appropriate corrective or remedial action.  One day later, on June 23, 2021, Defendants simply informed Plaintiff that her "PIP was not issued as an act of discrimination or retaliation."

76.     In or about June 2021, Patno resigned. Plaintiff was qualified to assume his position and job duties.

77.     Defendants instead assigned his job duties to Laura Bohroquez Perez (non-African American), Director of Growth and Strategy. Plaintiff was more qualified than Bohroquez Perez to assume the Vice President of Sales position and job duties.

78.     On or about July 22, 2021, Plaintiff filed her Second PHRC Complaint.

79.     On or about August 12, 2021, Defendants terminated Plaintiff's employment, effective September 1, 2021.

80.     At the time of Plaintiff's termination, Defendants told Plaintiff she was being terminated due to her PIP.

81.     However, Defendants subsequently informed Plaintiff that she was being terminated as part of a company reorganization.

82.     Defendants' articulated reason is a pretext.

83.     At the time of Plaintiff's termination, two other employees held the position of Sales Executive, Mark Russo (white) and Jennifer Ryan (white).

84.     Plaintiff was more qualified and experienced than both individuals to hold the position of Sales Executive.  Yet, Defendants terminated the employment of neither individual.

85.     Additionally, right before Plaintiff's termination, Brittany Goettsch (white), Sales

Case ID: 210701856

Executive, resigned.

86.     To Plaintiff's knowledge, Defendants were not going to terminate her

employment as part of the reorganization had she not resigned.

87.     Plaintiff was more experienced and qualified than Goettsch for the position of

Sales Executive.

88.     Additionally, Defendants retained MacDonald, Business Development Director,

and Traci Shoemaker (white), Business Development Manager.

89.     Plaintiff was more qualified than both those individuals to perform their positions.

90.     Following Plaintiff's notice termination, on or about August 31, 2021, Defendants

informed Plaintiff that they would not pay Plaintiff for sales commissions that were owed to

Plaintiff.

91.     Defendants have an underrepresentation of black employees, particularly in high-

level positions.

92.     Plaintiff worked in the Solutions Department with approximately fifty-five (55)

other employees.  Plaintiff was the only African American employee in the department.

93.     Plaintiff's race was a motivating and determinative factor in Defendants'

discriminatory treatment of Plaintiff, including, without limitation, failing to promote Plaintiff to

the Vice President of Sales position, failing to promote Plaintiff to the director of Business

Development position, failing to promote Plaintiff into any other open position for which she

was qualified, removal of Plaintiff's sales accounts/territories, failure to make Plaintiff a sales

liaison, removal of Plaintiff's job duties, and failure to compensate Plaintiff for sales

commissions that were owed to Plaintiff.

Case ID: 210701856

94.     Plaintiff's race was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

95.     Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' retaliatory treatment to which Plaintiff was subjected, including, without limitation, failing to promote Plaintiff to the Vice President of Sales position, failing to promote Plaintiff to the director of Business Development position, failing to promote Plaintiff into any other available position for which she was qualified, removal of Plaintiff's sales accounts/territories, failure to make Plaintiff a sales liaison, removal of Plaintiff's job duties, failure to compensate Plaintiff for sales commissions that were owed to Plaintiff, issuing Plaintiff an employee warning letter, issuing Plaintiff negative performance review, and issuing a PIP.

96.     Plaintiff's engaging in protected activity was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

97.     Plaintiff's actual and/or perceived disabilities and/or record of impairment was a motivating and determinative factor in Defendants' failure to promote plaintiff to the Vice President of Sales position, removal of Plaintiff's sales accounts/territories, and failure to compensate Plaintiff for sales commissions that were owed to Plaintiff.

98.     Plaintiff's actual and/or perceived disabilities and/or record of impairment was a motivating and determinative factor in Defendants' decision to terminate Plaintiff's employment.

99.     By terminating Plaintiff's employment after she took a leave of absence protected by the FMLA, Defendants discriminated and retaliated against Plaintiff for invoking her rights under the FMLA.

100.     Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work

Case ID: 210701856

environment.

101.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

102.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

103.    The retaliatory actions taken against Plaintiff after she engaged in protected activity would have discouraged a reasonable employee from complaining of discrimination.

104.    As a direct and proximate result of the discriminatory, harassing, and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

105.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

106.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

## **COUNT I – Section 1981**

107.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

Case ID: 210701856

108.    By committing the foregoing acts of race discrimination, harassment, and retaliation, Defendants violated Section 1981.

109.    Said violations were done with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

110.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

111.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory, harassing, and retaliatory acts unless and until this Court grants the relief requested herein.

112.    No previous application has been made for the relief requested herein.

## **COUNT II – FMLA**

113.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

114.    By committing the foregoing acts against Plaintiff, Defendants violated the FMLA.

115.    Defendants, by terminating Plaintiff after she took a protected leave of absence, discriminated and retaliated against Plaintiff and violated the FMLA.

116.    Defendants' actions were willful.

117.    The imposition of liquidated damages is warranted.

118.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has the suffered damages and losses set forth herein.

119.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless and until this Court

Case ID: 210701856

grants the relief requested herein.

120.   No previous application has been made for the relief requested herein.

### COUNT III - NYSHRL

121.   Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

122.   By committing the foregoing acts of discrimination, retaliation, and harassment against Plaintiff, Defendants violated the NYSHRL.

123    Plaintiff is entitled to punitive damages.

124.   As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has suffered the injuries, damages, and losses set forth herein.

125.   No previous application has been made for the relief requested herein.

### COUNT IV - NYCHRL

126.   Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

127.   By committing the foregoing acts of discrimination, harassment, and retaliation against Plaintiff, Defendants violated the NYCHRL.

128.   Defendants acted willfully or recklessly or with a conscious disregard of Plaintiff's rights, thereby warranting the imposition of punitive damages.

129.   As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has suffered the injuries, damages, and losses set forth herein.

130.   No previous application has been made for the relief requested herein.

Case ID: 210701856

## **COUNT V - Violation of the WPCL**

131.     Plaintiff incorporates by reference the paragraphs above as though set forth herein in their entirety.

132.     The commissions which Plaintiff is owed constitute "wages" under the WPCL.

133.     The commissions which Plaintiff is owed are earnings of Plaintiff.

134.     Defendants violated the WPCL because Plaintiff did not receive the commissions owed to her.

135.     Plaintiff is entitled to recover liquidated damages against Defendants in an amount equal to twenty-five percent (25%) of the commissions owed to her.

136.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Section 1981;

(b)     declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)     declaring the acts and practices complained of herein to be in violation of the NYSHRL;

(d)     declaring the acts and practices complained of herein to be in violation of the NYCHRL;

18

Case ID: 210701856

(e)      declaring the acts and practices complained of herein to be in violation of the WPCL;

(f)      enjoining and permanently restraining the violations alleged herein;

(g)      entering judgment against Defendants and in favor of the Plaintiff in an amount to be determined;

(h)      awarding Plaintiff back pay and front pay;

(i)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(j)      awarding Plaintiff all sales commissions owed to her;

(k)      awarding Plaintiff liquidated damages;

(l)      awarding Plaintiff punitive damages;

(m)      awarding Plaintiff interest;

(n)      awarding Plaintiff such other damages as are appropriate under Section 1981, the FMLA, NYSHRL, NYCHRL, and the WPCL;

(o)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(p)      granting such other and further relief as this Court may deem just, proper, or equitable.

Case ID: 210701856

**CONSOLE MATTIACCI LAW, LLC**

Dated: November 5, 2021          BY: _____

Stephen G. Console (36656)
Lane Schiff (314179)
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys for Plaintiff,
Marian "Josie" Washington-McQuay

Case ID: 210701856